**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **BERL MCKINNIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | 16 C 05778 |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **SHERIFF OF COOK COUNTY AND** | ) | |
| **COOK COUNTY, ILLINOIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Berl McKinnie, a detainee in Cook County Jail, filed a complaint bringing claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. McKinnie, who has a prosthetic leg, alleges that Thomas Dart, Sheriff of Cook County, Illinois, and Cook County, Illinois (collectively "Defendants") violated his constitutional and statutory rights by (1) failing to provide McKinnie with an accessible shower in his housing unit; and (2) failing to adopt a policy providing non-wheelchair-bound, disabled detainees with an accessible toilet while in lockup at the Leighton Courthouse. McKinnie has now moved for partial summary judgment against Defendants on his ADA claim relating to the accessible shower. For the reasons that follow, the Court denies McKinnie's motion.

## Background[1]

Berl McKinnie has been detained at the Cook County Jail since September 17, 2014. Pl.'s LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 39. McKinnie's right leg is amputated below the knee and he wears a prosthetic leg, which he must remove to shower. *Id.* ¶¶ 2, 3.

In March 2016, McKinnie was housed in Division 8, Tier 3F. *Id.* ¶ 9. Tier 3F has five shower stalls, one of which is an accessible stall for people with mobility disabilities, with a fixed bench and grab bars, as required by ADA design standards. *Id.* ¶ 13. While none of the showers in the tier have doors, the ADA-compliant shower is the least private because of its location, near a window that people walk by. Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 30, 31, ECF No. 46; *id.*, Ex. A, Rivero-Canchola Dep. at 21:14–23, ECF No. 46-2. McKinnie testified that he always enters the shower fully clothed and undresses in the shower, rather than wearing a towel into the shower area. Pl.'s LR 56.1(a)(3) Stmt., Ex. 2, McKinnie Dep. at 36:18–23, ECF No. 39. When using the ADA-compliant shower, McKinnie sits on the fixed bench to take off his clothes and prosthesis. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 32.

According to McKinnie, he always uses the ADA-compliant shower except when it is malfunctioning. McKinnie Dep. at 9:22–10:7. As of March 15, 2016, the

---

[1] The following facts are undisputed or deemed admitted unless otherwise noted. Where Defendants respond to McKinnie's statement with the phrase, "undisputed as to [McKinnie's] testimony," but do not make any references to the record indicating that the substance of the testimony is disputed, *see* Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 20, 21, 27, 28, 30, 33, ECF No. 45, the Court construes Defendants' response as an admission. *See* LR 56.1(b)(3)(B) (a nonmovant must file a concise response that "include[s], in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon").

ADA-compliant shower in the tier had been malfunctioning for more than three months. Pl.'s LR 56.1(a)(3) Stmt. ¶ 14. The water in the ADA-compliant shower stall would not shut off, with the lower shower head constantly running. *Id.* ¶ 15. As a result, there was always standing water in the ADA-compliant shower area. *Id.*; Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 33, 34.

The parties dispute whether the shower was usable while it was malfunctioning. *See* Pl.'s LR 56.1(a)(3) Stmt. ¶ 14; Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 14, ECF No. 45. According to the ADA Compliance Officer, Sabrina Rivero-Canchola, the shower was "usable" at all times because the water was running and the temperature was adequate. Rivero-Canchola Dep. at 30:14–24. But McKinnie testified that, due to the standing water, he would need to hop on one leg to use the malfunctioning ADA-compliant shower, a move he claims is "extremely dangerous." McKinnie Dep. at 19:10–18; Pl.'s LR 56.1(a)(3) Stmt. ¶ 19. Further, he claimed that, when the water was running, he could not sit on the bench to take his clothes off in the ADA-compliant stall, and the only other option would be to "take your clothes off in your living area and walk in the bathroom naked." McKinnie Dep. at 19:3–9. Defendants dispute that it is necessary for McKinnie to hop into the shower, contending that he could have removed his clothes in his living unit and simply walked to the shower. Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 19 (citing McKinnie Dep. at 19:3–9, 19–24).

Before March 16, 2016, McKinnie had complained about the malfunctioning ADA-compliant shower to Officer Rivero-Canchola, every officer in his tier, and several sergeants at the jail. Pl.'s LR 56.1(a)(3) Stmt. ¶ 20. Workers had attempted

to repair the ADA-compliant shower repeatedly without success. *Id.* ¶ 21. McKinnie had not, however, filed any formal grievances regarding the shower. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 13.

McKinnie was permitted to use a plastic activity chair to shower in non-ADA shower stalls when the ADA-compliant shower was malfunctioning. Pl.'s LR 56.1(a)(3) Stmt. ¶ 24; Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 24. The plastic activity chair is not a "shower chair" for people with mobility disabilities to use while showering. Rivero-Canchola Dep. at 18:23–20:8. Moreover, McKinnie experienced pain using the chair in a non-ADA stall that he would not have experienced in a functional ADA-compliant shower. Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 24, 25; McKinnie Dep. at 21:5–7.

On March 16, 2016, Sergeant Daily, a correctional officer, refused to give McKinnie permission to use the plastic chair to shower in a non-ADA stall, even though McKinnie explained that the ADA-compliant shower was broken. Pl's. LR 56.1(a)(3) Stmt. ¶¶ 27, 28. McKinnie directed the correctional officer's attention to a sign posted in the tier that stated that a shower chair is available for people with disabilities. *Id.* ¶¶ 30, 31. The sergeant still refused to allow McKinnie to use the activity chair.[2] *Id.* ¶ 32. McKinnie then complained to two nurses and an officer about the sergeant's conduct, but he was not provided with a chair. *Id.* ¶ 33. A few

---

[2] Defendants contend that Sergeant Daily's statements are inadmissible hearsay. Defs.' Resp. to Pl.'s LR 56.1(a)(3) Stmt. ¶ 32. However, Daily's statements were made while acting as Defendant Sheriff's employee on a matter within the scope of his employment; therefore, the statements are not hearsay under Fed. R. Evid. 801(d)(2)(D). *See also Thomas v. Cook Cnty. Sheriff's Dept.,* 604 F.3d 293, 310 (7th Cir. 2010).

hours later, McKinnie attempted to shower in a non-ADA stall despite not having the chair. *Id.* ¶ 34; McKinnie Dep. at 22:15–23:14. He first sat on the floor, removed his clothes and prosthetic leg, placed them outside the shower, and then maneuvered to a standing position on his left leg. Pl's. LR 56.1(a)(3) Stmt. ¶ 35. McKinnie was in pain while standing on his one leg. *Id.* ¶ 36. He then lost his balance, fell backwards, and hit his head. *Id.* ¶ 37. McKinnie was transported to Stroger Hospital for treatment. *Id.* ¶ 38.

According to Rivero-Canchola, McKinnie spoke to her about the broken shower a few days after his fall, when McKinnie's grievance about the shower reached her desk. *See* Rivero-Canchola Dep. at 27:22–28:9. Rivero-Canchola claims that McKinnie told her that "he fell because he tried to use the regular shower, and he wanted more privacy, and then he said he fell because he didn't have a shower chair, and then he said he fell because the shower was broken." *Id.* at 28:10–16. According to Rivero-Canchola, the first thing McKinnie told her was that he wanted to shower in a non-ADA shower for privacy reasons. *Id.* at 31:8–16; Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 29. McKinnie disputes that he spoke to Rivero-Canchola during the relevant time period and asserts that he never told her that he wanted to use the non-ADA stall "for privacy reasons or any reason other than the unusability of the accessible stall." *See* Pl.'s Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 18, ECF No. 53; *id.* Ex. 18, McKinnie Declaration ¶ 4.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

### Analysis

To succeed on a claim under Title II of the ADA, McKinnie must show that he is a qualified individual with a disability who was denied the benefits of a public entity's services, programs, or activities by reason of a disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 321 (2015); 42 U.S.C. § 12132. Such denial of benefits includes the failure to provide reasonable accommodations for a disability. *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). Furthermore, for McKinnie to be entitled to compensatory damages under the ADA, he must prove that Defendants "intentionally discriminate[d]" against him because of his disability. *Flora v. Dart,* No. 15 C 1127, 2017 WL

6

2152392, at *3 (N.D. Ill. May 17, 2017); *CTL ex rel. Trebatoski v. Ashland School Distr.,* 743 F.3d 524, 528 n.4 (7th Cir. 2014).

## I.    Qualified Individual Under the ADA

A qualified individual with a disability is an individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131.   Defendants concede that McKinnie is a qualified individual with a disability.  Defs.' Mem. Opp. Summ. J. at 10, ECF No. 47.

## II.    Denial of Services

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The benefits of services, programs, or activities in a jail include the use of a facility's showers, *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and "correctional facilities [ ] must 'take reasonable measures to remove architectural and other barriers" that deny access to such services.  *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)).

The parties dispute whether McKinnie had access to the ADA-compliant shower.  According to McKinnie, the shower was unusable during the three months that its faucet was continuously running.  Specifically, McKinnie contends that,

"because he must remove his prosthetic leg to shower, the only way for [him] to use the accessible shower, with its continuously running water and flooded shower floor, would have been by hopping into the shower," a move that McKinnie describes as "extremely dangerous." Pl.'s LR 56.1(a)(3) Stmt. ¶ 19. According to McKinnie, he could shower safely only in a properly functioning, ADA-compliant shower with a fixed shower chair and grab bars. Pl.'s Mem. Supp. Summ. J. at 10, ECF No. 40.

Defendants agree that the water in the ADA-compliant shower was continuously running. But Defendants contend that the ADA-compliant shower remained usable, as it produced water and the water temperature was adequate. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 12; Rivero-Canchola Dep. at 30:14–24. While Defendants concede that the running water may have deterred McKinnie from using the ADA-compliant shower to undress, they argue that a reasonable trier of fact could conclude that the ADA-compliant shower was available to bathe. Defs.' Mem. Opp. Summ. J. at 13. Indeed, as McKinnie would sit on the fixed bench to take off his prosthesis when the ADA-compliant shower was not malfunctioning, *see* Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 32, a reasonable trier of fact could conclude that even when the water was continuously running, McKinnie could have sat on the edge of the shower bench and removed his prosthetic leg without getting the prosthetic wet, and then proceed to shower without an issue. Defendants dispute McKinnie's testimony that he must hop into the shower, *see* Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 19, and argue that the real reason McKinnie preferred to use the non-ADA showers on his tier was because those showers offered more privacy than the ADA-compliant shower. Defs.' Mem. Opp. Summ. J. at 11–12.

8

Given the evidence presented, a reasonable trier of fact could conclude that the continuously running water in the ADA-compliant shower on McKinnie's tier did not rise to the level of denying McKinnie access to the benefits of showering. McKinnie's testimony about the dangerousness of entering the shower while it was continuously running was vague, *see* McKinnie Dep. at 19:10–18, and a reasonable trier of fact could conclude, based on the available evidence, that McKinnie could have sat on the end of the fixed bench to remove his prosthesis, without the risk of harm, *see id.* at 19:19–20:10.

Additionally, there are facts from which a trier of fact could find that McKinnie's use of the less safe, non-ADA-compliant showers was not driven by need, but instead out of preference, given that the continuously running shower required McKinnie to undress before showering, which he preferred not to do. *See id.* at 36:18–23. And if Defendants have provided McKinnie with a shower that meets ADA design standards, but he prefers not to use it for personal reasons, there is no ADA violation. *See Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 682 (7th Cir. 2010) (finding that an employee who refused an ADA accommodation that satisfied ADA design requirements "for personal reasons" could not demonstrate that the employer failed to reasonably accommodate her disability); *Flynn v. Doyle*, 672 F. Supp. 2d 858, 879 (E.D. Wisc. 2009) (stating that, while Title II of the ADA proscribes discrimination on the basis of disability, "[t]his is not to say that the plaintiffs are entitled to whatever form of accommodation they prefer"). The Court thus finds that there is a genuine dispute

as to a material fact relating to whether McKinnie was denied the benefits of showering.[3]

Because there is a disputed question of fact as to whether McKinnie was denied the benefits of showering, the Court need not address the remaining element of McKinnie's ADA claim that Defendants intentionally discriminated against McKinnie on account of his disability.

## Conclusion

For the foregoing reasons, the Court denies McKinnie's motion for partial summary judgment [38] as to McKinnie's ADA claim against Defendants for failing to provide an accessible shower. The Court sets a status hearing for 3/29/18 at 9:00 a.m.


**IT IS SO ORDERED.**          ENTERED  3/22/18

_____
**John Z. Lee**
**United States District Judge**

---

[3]     Even if the trier of fact concludes that the ADA-compliant shower was unusable, the factfinder would need to decide the question of whether the plastic chair provided to McKinnie to use in a non-ADA shower was a "reasonable accommodation," and whether the denial of that chair for one day on March 15, 2016, rose to the level of a denial of access. *See Holmes v. Godinez*, 311 F.R.D. 177, 228 (N.D. Ill. 2015) (denying summary judgment where there was a disputed issue of fact as to whether IDOC provides hearing-impaired inmates with adequate accommodations in education and vocational programs).